IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRIS COLEMAN, | ) |
| Plaintiff, | ) |
| v. | ) Cause No.: 3:17-cv-00573 |
| CITY OF CAIRO, ILLINOIS, | ) |
| JOHN BOSECKER, in his official and Individual capacities, | ) |
| MAYOR TYRONE COLEMAN, in his Official and individual capacities, | ) |
| MARTHA NICHOLSON, in her official And individual capacities, | ) |
| and | ) |
| LORI HESSELRODE, in her official and Individual capacities | ) |
| Defendants. | ) |

# COMPLAINT

## PARTIES & JURISDICTION

1. Plaintiff, Chris Coleman (hereinafter "Plaintiff" or "Coleman"), is an individual with his place of residence in Alexander County, Illinois in the Southern District of Illinois. At all times herein relevant, Coleman was employed by the City of Cairo, Illinois ("City") as a police dispatcher in the Cairo Police Department ("Department").

2. Defendant City is a city in Alexander County, Illinois and organized and existing under the laws of the State of Illinois. The City has the power to sue and be sued and to be a party to suits, actions and proceedings.

3. Defendant John Bosecker is a resident of Pulaski County, Illinois, and at times relevant herein, was the Chief of Police of the City. He is sued in his official and individual capacities. As described more fully herein, Defendant Bosecker participated in the discrimination, retaliated against Coleman for his complaints about gender discrimination, unsafe and illegal work environment and the exercise of his free speech.

4. Defendant Mayor Tyrone Coleman is a resident of Alexander County, Illinois, and at all times relevant herein, was the Mayor of Cairo. Mayor Coleman is sued in his official and individual capacities. As described more fully herein, Mayor Coleman participated in the illegal termination, and most specifically, the retaliation against Plaintiff for the exercise of his First Amendment rights.

5. Defendant Martha Nicholson is a resident of Alexander County, Illinois, and at all times relevant herein, was a dispatcher and a union steward. Defendant Nicholson is sued in her official and individual capacities. As described more fully herein, Defendant Nicholson participated in the gender discrimination and retaliation by refusing entry into the union even though Plaintiff met all requirements for membership.

6. Defendant Lori Hesselrode is a resident of Alexander County, Illinois, and at all times relevant herein, was the City Clerk. Defendant Hesselrode is sued in her official and individual capacities. As described more fully herein, Defendant Hesselrode participated in the gender discrimination and retaliation by refusing treat Plaintiff as a full-time employee, for

example but not by way of limitation, failing to change the rate of pay from a part-time employee to a full-time employee, failing to provide vacation and sick days.

7. This action is brought pursuant to 42 U.S.C. §1983, as well as the First, Fifth and Fourteenth Amendments to the United States Constitution, and Title VII of the Civil Rights Act of 1964 for gender discrimination and retaliation. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for these federal claims. This action also includes an Illinois state law claims under the Illinois Whistleblower Act pursuant to 740 ILCS 174/1 *et seq*. This Court has jurisdiction over these state laws under pursuant to 28 U.S.C. § 1367. Plaintiff requests a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

8. Venue is proper in the Southern District of Illinois, because all Defendants reside therein and all of the events complained of herein occurred in Cairo, Illinois within the Southern District of Illinois.

## FACTS COMMON TO ALL COUNTS

9. At all times relevant, Plaintiff was a police dispatcher for the City of Cairo, Illinois. Plaintiff faithfully performed his duties until the time of his wrongful termination.

10. Plaintiff began working as a part-time dispatcher in September of 2014. Prior to this "start date," Plaintiff trained at the City for two to three months as a dispatcher without pay.

11. From September of 2014 to July 15, 2015 Coleman worked, on average, two to three days per week.

12. Beginning on July 15, 2015, Coleman began working full-time on an average of 40 or more hours per week.

13. This change occurred because Cheryl James, the regular full-time dispatcher, left the City's employment.

14. Several days prior to this change in July of 2015, Defendant Bosecker stated that although Plaintiff would be working full-time, the City would not be paying him or providing benefits to him like other similarly-situated City employees.

15. Plaintiff objected to this arrangement, but at the time, needed his job more than to stand on principle.

16. After a few weeks of working full-time without full-time benefits, pay and other emoluments, Coleman began complaining regularly to Defendant Bosecker. Coleman regularly requested that he receive equal pay, benefits and emoluments as other current and past female employees.

17. Defendant Bosecker repeatedly claimed that the City "did not have the money" to pay Plaintiff legally, even though the former female dispatcher had been paid more and with benefits.

18. After Plaintiff became a full-time employee in July of 2015, Plaintiff requested information from Defendant Nicholson about joining the union and asked what he needed to do.

19. Defendant Nicholson stated falsely that Plaintiff did not qualify for the union and refused to elaborate further. Defendant Nicholson blocked and refused Plaintiff from entry into the union during his entire employment.

20. Also, around this same time period in the late summer of 2015, although having questioned it in the past, Coleman began regularly questioning Defendant Bosecker and Hesselrode about the environmental, work safety, and health issues at the City of the presence of toxic mold caused by leaks, a failure of upkeep and maintenance and shoddy facilities.

21. Both Bosecker and Hesselrode, for months made empty promises that the toxic mold issue would be dealt with, but no actions were ever taken or completed.

22. The more Plaintiff complained about the illegal actions of the City and the individual Defendants, the Defendants hostility towards Plaintiff increased over time until the end of his employment when their behavior was outright hostile towards Plaintiff.

23. In February of 2016, all of Plaintiff's complaints about illegal activities at the City came to a head and Defendants created multiple pretextual reasons to terminate Plaintiff in retaliation for his complaints.

24. In early February of 2016, Defendant Mayor Coleman arrived at the dispatch to get a cup of coffee and stood behind Plaintiff's chair at the dispatch desk.

25. The Mayor started talking about a floor replacement that had been caused by a leaky roof, and raised an issue of the City providing an individual with public funds to improve a business (a liquor store) in the City.

26. Coleman questioned the Mayor about whether to not issuing public funds to this individual, who had a known criminal history and prior law enforcement contacts, was the best use of public funds.

27. The Mayor's response was that this individual was "not as bad as everyone says he is."

28. Plaintiff responded that this individual had been involved in "some pretty bad stuff."

29. The Mayor left the dispatch office moments later to attend to a service at City Hall.

30. Although Plaintiff did, likely on multiple occasions, run the criminal history of the individual in question, Coleman's free speech to the Mayor regarding the use of public funds

to a known criminal was not the result of any specific criminal background check ran through LEADS. This person's criminal history is publicly available on multiple court websites.

32. On February 12, 2016 the Mayor called and told Plaintiff he needed to be in the Mayor's office at 10 a.m. on Monday, February 15, 2016.

32. When Plaintiff arrived the Chief Bosecker accused Plaintiff of using LEADS, the law enforcement data base, to get information on the individual and giving it to the Mayor (thereby "gossiping"), accused Plaintiff of failing to arrive 15 to 20 minutes before his shift without pay, of violating the code of ethics, failing to follow an officer's order by not showing up early for shifts, and insubordination for taking training classes.

33. Plaintiff was terminated effective immediately during this meeting.

34. Plaintiff was not provided with any hearing or due process prior to or after his termination.

35. Plaintiff was not provided with any notice of the termination, no ability to defend himself and not legal counsel or other representative.

## COUNT I -- 42 U.S.C. SECTION 1983
## VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS

COMES NOW Plaintiff, by and through his undersigned counsel, and for Count I of his Complaint, states as follows:

36. Plaintiff incorporates the preceding paragraphs of this Complaint into Count I of this Complaint as if fully set forth herein.

37. Defendants' conduct as set forth herein was so outrageous that it shocks the conscience, was arbitrary and capricious, offended the judicial notions of fairness and was

otherwise offensive to human dignity in that Defendants fired Plaintiff with no due process and claimed violations of rules and a handbook for Police Officers that does not apply to Plaintiff.

38. Plaintiff's interest in his right to engage in the common occupations of life was interfered with by Defendants' actions in erminating him, which was patently arbitrary and capricious, and resulted in Plaintiff's loss of employment, including wages and other benefits of employment.

39. As a result, Plaintiff's substantive due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution, were violated by Defendants, actionable under 42 U.S.C Section 1983.

40. Plaintiff's property interest in his continued employment, to the extent he could only be discharged for cause and after a hearing, and his liberty interest in his employment outweigh any interest the Defendants had in terminating his employment.

41. Defendants conduct as set forth herein was arbitrary and capricious, unjustified and intended to cause injury to Plaintiff.

42. Plaintiff's termination was an adverse employment action which Defendants took under color of state law, and as a result of such action, Plaintiff has sustained and will continue to suffer lost wages and other benefits of employment, diminished employment opportunities, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

43. The conduct of terminating Plaintiff as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiff's constitutional rights as set forth above, justifying an award of punitive damages and attorneys' fees.

WHEREFORE, Plaintiff Chris Coleman prays for the entry of judgment against Defendants in their individual and official capacities, jointly and severally, for compensatory damages in a sum that is fair and reasonable, and for the entry of judgment against these Defendants in their individual capacities, jointly and severally, for punitive damages in a sum that is fair and reasonable, sufficient to punish the Defendants and to deter others similarly situated from engaging in similar misconduct, for his costs herein expended, including but not limited to reasonable attorneys' fees, and for such other and further relief as may be appropriate under the circumstances.

## COUNT II -- 42 U.S.C. SECTION 1983
## VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE SPEECH

COMES NOW Plaintiff, by and through his undersigned counsel, and for Count II of his Complaint, states as follows:

44. Plaintiff incorporates the preceding paragraphs of this Complaint into Count II of this Complaint as if fully set forth herein.

45. Plaintiff was terminated by the Defendants based upon his exercise of his First Amendment rights by speaking about issues/matters of public concern concerning the use of public money in the form of TIF funds provided to an individual with prior criminal and law enforcement contacts.

46. Coleman's speech, and more specifically, his private expression to the Mayor, was a motivating factor and/or played a part in the Defendants' decision to fire Coleman.

47. Coleman's speech regarding the distribution of public funds to a persons with criminal history, constituted speech regarding matters of public concern.

48. Coleman's constitutionally protected interest in free speech regarding matters of public concern outweighs any interests Defendants might have in preventing such speech.

49. Coleman's protected speech was made at a reasonable time and in a reasonable manner did not render the City's government inefficient, and Coleman's speech did not disrupt City operations in any way.

50. Coleman's termination was an adverse employment action authorized, approved, and/or ratified by the Defendants acting under color of state law.

51. Coleman's termination by Defendants under color of state law violates his rights secured by the Constitution of the United States, specifically the First, Fifth and Fourteenth Amendments.

52. As a direct and proximate result of Coleman's termination by Defendants for exercising his First Amendment right to free speech, taken under color of law, Coleman has sustained and will continue to sustain lost wages and other benefits of employment.

53. As a direct and proximate result of Coleman's termination by Defendants for exercising his First Amendment right to free speech, taken under color of law, Coleman has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

54. The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Coleman's constitutional rights as set forth above, justifying an award of punitive damages against the Defendants in their individual capacities.

WHEREFORE, Plaintiff Coleman prays this Court to enter judgment in his favor and against Defendants and thereafter:

A. Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B. Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C. Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D. Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

E. Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III – TITLE VII OF THE CIVIL RIGHTS ACT
## GENDER DISCRIMINATION AND RETALIATION

COMES NOW Plaintiff, by and through his undersigned counsel, and for Count III of his Complaint, states as follows:

55. Plaintiff incorporates the preceding paragraphs of this Complaint into Count III of this Complaint as if fully set forth herein.

56. Defendants refused to pay and provide benefits to Plaintiff because of his gender – male.

57. Plaintiff's female counterparts were provided with increased pay, benefits and union membership, all of which were denied to him due to his gender.

58. When Plaintiff continued to complain about and report the gender discrimination, Defendants retaliated against him and eventually terminated him based on his gender and in retaliation for his complaints and reports of gender discrimination.

59. Plaintiff filed a complaint for discrimination and retaliation, and was issued a "Right to Sue" letter by the Department of Justice, which is attached hereto as <u>Exhibit 1.</u> Plaintiff has exhausted his administrative remedies and has filed this lawsuit within the appropriate time limits.

60. As a direct and proximate result of Defendants' actions, Coleman was discharged from his employment with the City, resulting in him sustaining and continuing to sustain lost wages and other benefits of his employment.

61. As a direct and proximate result of the Defendants' actions, Coleman has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

62. The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Coleman's rights as set forth above, justifying an award of punitive damages against the Defendants in their individual capacities.

WHEREFORE, Plaintiff Coleman prays this Court to enter judgment in his favor and against Defendants and thereafter:

A. Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B. Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C. Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D. Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E. Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT IV – 740 ILCS 174/1 et seq.
## ILLINOIS WHISTLEBLOWER ACT

COMES NOW Plaintiff, by and through his undersigned counsel, and for Count IV of his Complaint, states as follows:

63. Plaintiff incorporates the preceding paragraphs of this Complaint into Count III of this Complaint as if fully set forth herein.

64. Defendants are employers within the meaning of the Illinois Whistleblower Act.

65. Plaintiff made repeated and continued complaints about the dangerous and unhealthy work environment provided by Defendants.

66. The working environment created dangerous and unhealthy working environment for Plaintiff and other employees.

67. Defendants forcing Plaintiff and others to work in a dangerous and unhealthy condition and illegal under state and federal law, including but not limited to the Occupational Safety and Health Act of 1970 and The Illinois Occupational Safety and Health Act.

68. After Plaintiff's complaints, he was terminated.

69. As a direct and proximate result of Defendants' actions, Coleman was discharged from his employment with the City, resulting in him sustaining and continuing to sustain lost wages and other benefits of his employment.

70. As a direct and proximate result of the Defendants' actions, Coleman has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

71. The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Coleman's rights as set forth above, justifying an award of punitive damages against the Defendants in their individual capacities.

WHEREFORE, Plaintiff Coleman prays this Court to enter judgment in his favor and against Defendants and thereafter:

A. Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B. Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C. Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D. Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E. Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

**NEWTON BARTH, L.L.P.**

By: /s/ *Brandy B. Barth*
Brandy B. Barth, Ill. Bar No. 6285366
555 Washington Ave., Suite 420
St. Louis, Missouri 63101
(314) 272-4490 – Telephone
bbarth@newtonbarth.com
Attorneys for Plaintiff